UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

PAUL JOHNSON DURKIN,   Case No. 23-10665-t7

    Debtor.

CHRISTEN HAGEMANN,

    Plaintiff,

v.   Adv. No. 23-1046-t

PAUL JOHNSON DURKIN,

    Defendant.

## **OPINION**

Before the Court is Plaintiff's motion for summary judgement that the guardian ad litem fees Defendant owes her are a nondischargeable domestic support obligation under § 523(a)(5).[1] Defendant opposes the motion, arguing that the fees were part of a divorce and custody battle in state court, are not related to the financial support of his child, and therefore do not come within § 523(a)(5). For the reasons given below, the Court will grant Plaintiff's motion.

A.    Facts.[2]

---

[1] Unless otherwise noted, all statutory references are to 11 U.S.C.
[2] The Court takes judicial notice of its docket in this adversary proceeding, the main bankruptcy case, and the divorce case, styled *Cherne-Durkin v. Cherne-Durkin,* D-202-DM-2019-02970, filed in the Second Judicial District Court in the State of New Mexico (the "Divorce Case"). *See Gee v. Pacheco,* 627 F.3d 1178, 1191 (10th Cir. 2010) ("We take judicial notice of court records in the underlying proceedings."); *United States v. Ahidley,* 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("[W]e may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.")

The Court finds that the following facts[3] are not in genuine dispute:[4]

In September 2019, Defendant filed the Divorce Case, seeking to dissolve his marriage to Jessey Cherne. At the time, Defendant and Cherne had a 1-year-old daughter, Sophia.

In October 2019, Defendant and Cherne agreed to the divorce court's appointment of Plaintiff as Sophia's guardian ad litem. The appointment was made under NMSA § 40-4-8 and NMRA 1-053.3. Plaintiff was charged with the duty of representing Sophia's best interests.

In connection with Plaintiff's appointment the parties stipulated, and the divorce court ordered:

> i. Each party shall pay one-half (1/2) of the GAL's retainer of $4,000.00 and $275.00 hourly; (retainer fee paid by parties by November 30, 2019);
> ii. The GAL shall submit itemized monthly invoices for professional services to the parties;
> iii. The GAL may recommend reallocation of GAL fees and expenses;
> iii. [sic] Either party or the GAL may request a hearing on the GAL fees and costs.
> iv. The GAL shall not begin work until each party's retainer has been received. Should the GAL not receive the retainer by November 22, 2019, the GAL shall notify the Court of such non-compliance.

Nothing in the Divorce Case record indicates that the parties did not promptly pay their respective retainers.

---

[3] The summary judgment record is not as tidy as it should be. The Court finds and concludes that, in addition to judicial notice of the dockets, the following comprises the summary judgment record:
- Durkin's admissions and allegations in his motion to discharge Plaintiff's fees, filed in the main case, together with the exhibits to the motion;
- Hagemann's allegations and Durkin's corresponding admissions in his answer to Hagemann's complaint; and
- Hagemann's allegations and Durkin's corresponding admissions in his response to Hagemann's motion for summary judgment.

See Fed. R. Civ. P. ("Rule") 56(c)(3).

[4] Some of the Court's findings are in the discussion section of the opinion. They are incorporated by this reference.

On March 30, 2020, Plaintiff filed a 19-page report in which she recommended the development of a time-sharing plan for Sophia's care, to be monitored and revisited in September 2020. Plaintiff also recommended therapy for Sophia, Defendant, and Cherne. In November 2020, Plaintiff filed a 16-page updated report in which she recommended moving toward a 50/50 timesharing plan for Sophia's care, continued therapy, and the appointment of a parenting coordinator.

The divorce court held an evidentiary hearing on June 13, 2022, on child custody and related issues. The hearing was continued to January 9, 2023. Defendant, Cherne, and Plaintiff participated. On June 14, 2023, the divorce court issued an order on the custodial issues, in which it set forth parenting and time-share arrangements and released Plaintiff from further guardian ad litem duties.

Defendant filed this chapter 7 case pro se on August 11, 2023. On September 5, 2023, he filed a motion to discharge Plaintiff's fees. Defendant attached to the motion Plaintiff's reports and fee bills. Plaintiff responded on October 4, 2023, arguing that the motion was procedurally defective and that the relief sought must be pursued through an adversary proceeding. On the same day, Plaintiff filed this proceeding.

On November 8, 2023, the Court denied Defendant's motion without prejudice, instructing him to seek any desired relief in this adversary proceeding.

Plaintiff filed a motion for summary judgment on November 15, 2023. For factual support she relied on Defendant's allegations in his motion filed in the main case and his answers to her complaint. Defendant responded to the summary judgment motion. He did not controvert any of the alleged undisputed facts in the manner required by Rule 56(c). The Court therefore treats all of Plaintiff's alleged facts as undisputed.

B.     <u>Summary Judgment Standards</u>.

It is appropriate for the Court to grant summary judgment if the pleadings, discovery materials, and affidavits before the Court show there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. See Rule 56(a), made applicable in adversary proceedings by Fed. R. Bankr. P.[5] 7056, and to contested matters by Bankruptcy Rule 9014. "[A] party seeking summary judgment always bears the initial responsibility of informing the … court of the basis for its motion, and … [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Courts must review the evidentiary materials submitted in support of a motion for summary judgment to ensure that the motion is supported by evidence. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden, then summary judgment must be denied.

But, if the movant has demonstrated the absence of a genuine issue of material fact, Rule 56(e) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *See Celotex,* at 324; *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 256 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1539 (10th Cir. 1993) ("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.")(internal quotes omitted). "The court need consider only the cited materials, but it may consider other materials in the record." Rule 56(c)(3).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[A] party opposing a properly

---

[5] A "Bankruptcy Rule."

supported motion for summary judgment may not rest upon the mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Wilson v. Village of Los Lunas,* 572 Fed. App'x 635, 640 (10th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248). If a party fails to properly address another party's assertion of facts, "the facts are considered undisputed." *Id.* (citing Rule 56(e)(2)); *see also Reed v. Bennett,* 312 F.3d 1190, 1194–95 (10th Cir. 2002) ("Even if the non-moving party does not file a response, the Court must satisfy itself that the movant's properly supported facts entitle the movant to judgment as a matter of law before the Court will grant summary judgment.").

C.  Domestic Support Obligations.

Debts for "domestic support obligations" are excepted from discharge under § 523(a)(5). The term "domestic support obligation" is defined in § 101(14A):

> The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is;
> (A)  owed to or recoverable by—
>    (i)  a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; …
> (B)  in the nature of alimony maintenance or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> (C)  established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
>    …
>    (ii)  an order of a court of record; …

Plaintiff argues that her fees are a domestic support obligation because they are in the "nature of support" for Sophia. Defendant disagrees; he argues that the fees were incurred in connection with his custody battle with his ex-wife, which did not concern Sophia basic needs,

and are therefore not in the nature of support. He also argues that the fees must be explicitly categorized as child support to be nondischargeable and that they are not so categorized.

D.  Tenth Circuit law on the dischargeability of guardian ad litem fees.

In the Tenth Circuit, guardian ad litem fees are considered nondischargeable child support, even if owed to the guardian ad litem directly. The first relevant case is *Jones v. Jones*, 9 F.3d 878 (10th Cir. 1993), which held that a debt for court-ordered attorney fees arising from postdivorce custody litigation was in the nature of support and therefore was nondischargeable:

> We hold that the term "support" as used in § 523(a)(5) is entitled to a broad application. . . . Therefore, in order that genuine support obligations are not improperly discharged, we hold that the term "support" encompasses the issue of custody absent unusual circumstances not present here. Consequently, court-ordered attorney's fees arising from post-divorce custody actions are deemed in the nature of support under § 523(a)(5) as being incurred on behalf of the child. This debt is nondischargeable.

*Id.* At 881-82.

Two years later the Tenth Circuit decided *In re Miller*, 55 F.3d 1487 (10th Cir. 1995). In *Miller*, the debtor had been a party to a divorce proceeding. The divorce court appointed a guardian ad litem and a psychologist to assist with custody determinations. After ruling on the custody issues, the divorce court ordered the debtor to pay a portion of the fees charged by the guardian ad litem and the psychologist. The debtor subsequently filed a chapter 7 bankruptcy case, followed by an adversary proceeding seeking a determination that the fees were dischargeable. The bankruptcy court ruled in her favor, holding that § 523(a)(5) required the debt to be owed to the spouse, former spouse, or child. The district court reversed, holding that, under the *Jones* rationale, the fees were nondischargeable. The Tenth Circuit affirmed the district court:

> [D]ebts to a guardian ad litem, who is specifically charged with representing the child's best interests, and a psychologist hired to evaluate the family in child custody proceedings, can be said to relate just as directly to the support of the child as attorney's fees incurred by the parents in a custody proceeding. . . . In addition,

several cases that, like *Jones*, focus the analysis on the nature of the debt rather than the identity of the payee, have held fees incurred in divorce or child custody proceedings to be nondischargeable. Some of the cases identify whether the state court ordered the fee paid to a former spouse or to a third party, but some do not. The implication in all of them, however, is that form should not be placed over substance and that it is the nature of the debt that controls, not the identity of the payee.

*Id.* at 1490.

When *Jones* and *Miller* were decided, § 523(a)(5) excepted from discharge any debt:

to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record . . . .

The Court must consider whether the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which included changes to § 523(a)(5) and the addition of § 101(14A), superseded or fundamentally altered *Miller*. One court opined that *Miller* did not survive BAPCPA. In *Tucker v. Oliver*, 423 B.R. 378 (W.D. Okla. 2010), the district court held that the language differences between the pre- and post-BAPCPA versions of § 523(a)(5) evinced a congressional intent:

to focus on which debtors [sic; creditors?] were, or were not, within the scope of the nondischargeability provision. Further, the format used by Congress in the new definition, which sets out in a separate labeled subsection the requirements as to who the debt is owed to, separate from a distinct subsection setting out the required nature of the obligations, strongly suggests it viewed these as distinct and separate requirements which must both be met in order to meet the definition of "domestic support obligation."

*Id.* at 381. Based in part on this ruling, the district court held that a debt to a former daughter-in-law, incurred while litigating grandparent visitation rights, was dischargeable because the daughter-in-law was not the "spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative." *Id.* For case law agreeing with *Tucker*, *see In re Brooks*,

371 B.R. 761, 764-65 (Bankr. N.D. Tex. 2007), and *In re Olson*, 355 B.R. 649, 659 (Bankr. E.D. Tenn. 2006).

On the other hand, in *In re Notary*, 547 B.R. 411 (Bankr. D. Colo. 2016), the bankruptcy court held that the language changes in BAPCPA did not overturn *Miller*'s holding that the nature of the debt, rather than the payee, is determinative.

> *Miller* was decided pre-BAPCPA but, notwithstanding the changes made in BAPCPA, *Miller's* rationale that the Court must look to the substance of the award and not the form still rings true. Moreover, the precise language analyzed in *Miller*—"any debt—to a spouse, former spouse, or child of the debtor" is the language that appears in the current version of 11 U.S.C. § 523(a)(15). It would be strange indeed if Congress intended the BAPCPA changes made to the wording of the definition of "domestic support obligation," 11 U.S.C. § 101(14A) . . . . to make a support obligation more difficult to recover than a non-support obligation . . . .
> Thus, the Court believes it is immaterial that the payees of the attorney fee awards in this case are the Attorneys and not the Debtor's former spouse.

547 B.R. at 421-22. *Notary's* holding that BAPCPA did not change *Miller's* rule about "the nature of the debt . . . not the identity of the payee" has significant case law support. *See, e.g., Kelly v. Burnes (In re Burnes)*, 405 B.R. 654, 659 (Bankr. W.D. Mo. 2009) ("I see no substantive difference between the 1988 Code's 'to a spouse, former spouse, or child' and BAPCPA's 'owed to or recoverable by ... a spouse, former spouse, or child.' Consequently I see no basis to conclude that the Eighth Circuit would interpret § 101(14A) differently than it did § 523(a)(5) under the 1988 version of the Code."); *In re Reed*, 2020 WL 2193244, at *2 (Bankr. W.D. Mo.) (citing and following *Burnes*); *In re Rubenstein*, 2012 WL 837339, at *3 (Bankr. D. Conn.) (Second Circuit precedent, which is consistent with *Miller*, was not changed by BAPCPA); *In re Rogowski*, 462 B.R. 435, 444 (Bankr. E.D.N.Y. 2011) (same); *Levin v. Greco*, 415 B.R. 663, 666-67 (N.D. Ill. 2009) (collecting cases and adopting the *Miller* rule, post-BAPCPA); *In re Bobinski*, 550 B.R. 417, 420-21 (N.D. Ind. 2015) (same); *In re Anderson*, 463 B.R. 871, 876 (Bankr. N.D. Ill. 2011) (same); *In re Stuteville,* 611 B.R. 886, 893 (Bankr. D.N.M. 2019) (citing and following *Miller*); *see*

*generally* NMRA 1-053.3 (guardian ad litem fees and costs are in the nature of support of the child and are not dischargeable in a bankruptcy proceeding).[6]

Defendant cites two cases in support of his position that Plaintiff's fees are not in the nature of support and are therefore dischargeable. First, Defendant cites "the landmark case of *In re Kassicieh* (2012)" and argues that in *Kassicieh* the Sixth Circuit Bankruptcy Appellate Panel held that "GAL fees incurred in a custody dispute were not domestic support obligations and were therefore dischargeable in bankruptcy." Defendant gets the case exactly backward. *Kassicieh* is a good, well-reasoned, and often cited case, but it supports Plaintiff's position, not Defendant's. In *In re Kassicieh*, 467 B.R. 445 (Bankr. S.D. Ohio 2012), the bankruptcy court held:

> It is nearly universally recognized that when a state domestic relations court appoints a guardian ad litem to protect the interests of a child, the services provided by the guardian ad litem have the effect of providing support. The parents or other parties who created the dispute requiring the appointment of the guardian ad litem must bear the cost of that support. Accordingly, equity requires—and the clear weight of caselaw authority holds—that fees incurred by a guardian ad litem be classified as a support obligation that may not be discharged by the parent or other party responsible for the fees.

*Id.* at 451. The court held that the fees were nondischargeable even though they were owed to the guardian ad litem rather than to a "spouse, former spouse, or child of the debtor." *Id.* at 451 The ruling was affirmed by the Sixth Circuit Bankruptcy Appellate Panel, 482 B.R. 190, 191 (6th Cir. BAP 2012), "for the reasons stated in the bankruptcy court's well-written opinion."

---

[6] Whether *Miller* survived BAPCPA would be largely moot if a guardian ad litem was a form of "legal guardian." *See* § 101(14A)(A)(1). The Court concludes, however, that it is not. *See, e.g., In re Corson*, 629 B.R. 1, 8-10 (Bankr. D.N.H. 2021), and *In re Greco*, 397 B.R. 102, 109-10 (Bankr. N.D. Ill. 2008), reversed on other grounds, 415 B.R. 663 (N.D. Ill. 2009); *cf. In re Rackley*, 502 B.R. 615, 629-30 (Bankr. N.D. Ga. 2013). The Court is persuaded by the reasoning of *Corson* and *Greco* that a guardian ad litem has distinct and much more limited duties than a legal guardian, and therefore cannot be considered a form of legal guardian.

Defendant's other case law citation is to "*In re Levin* (2008)," a case from the bankruptcy court of the Norther District of Illinois. That is the *Greco* case, cited in footnote 6. While the bankruptcy court's ruling in *Greco* supports Defendant's position, the ruling was reversed on appeal to the district court. The district court, citing *Miller* and cases from the Seventh, Second, Fifth, Eighth, and Ninth Circuits, "adopt[ed] the uniform circuit court authority regarding the scope of the domestic support exception" and held that fees owed to a "child representative"[7] were nondischargeable domestic support obligations even though they were owed to the representative. *Levin v Greco*, 415 B.R. at 667.

The Court concludes that *Miller* remains binding precedent and governs the decision in this case. Its mandate to focus on the nature of the debt also overrules Defendant's argument that the GAL fees must be explicitly categorized as nondischargeable or as support, as does the language of § 101(14A).[8]

Furthermore, *Miller's* holding that fees charged by a guardian ad litem in a divorce case are nondischargeable under §523(a)(5) is fair and equitable. Defendant does not dispute that he agreed to Plaintiff's appointment, nor that he owes money to Plaintiff for her work, nor that her fees were incurred representing Sophia's interests in the custody battle. The Divorce Case was very contentious and nasty. His ex-wife filed many police reports accusing Defendant of child abuse and similar bad acts. He made corresponding accusations. Without the appointment of Plaintiff and her thorough reports, the divorce court would have had a very difficult time sorting fact from fiction and devising a good custody plan for Sophia. Proper custody of an infant child is

---

[7] A position created by Illinois law. A child representative is similar to a guardian ad litem but has a more active role in the proceedings.
[8] "… without regard to whether such debt is expressly so designated; …" 11 U.S.C. § 101(14A)(B).

a crucial aspect of support.[9] It is neither far-fetched nor unfair to follow *Miller* and hold that Plaintiff's fees are a nondischargeable domestic support obligation.

The Court concludes that Plaintiff is entitled to summary judgment that her claim against Defendant for the guardian ad litem work is a "domestic support obligation" under § 101(14A) and thus is nondischargeable under § 523(a)(5).

## Conclusion

Plaintiff's fees are a domestic support obligation and, as such, are excepted from discharge under § 523(a)(5). Under *Miller,* which is still good law, it is of no moment that the fees are owed to Plaintiff rather than to Sophia or Cherne. By separate order, the Court will grant Plaintiff's motion for summary judgment.

_____
Hon. David T. Thuma
United States Bankruptcy Court

Entered: December 20, 2023

Copies to: counsel of record

and to:

Paul Durkin
316 Pequin Trail SE
Albuquerque, NM 87123

---

[9] "§ 523(a)(5) should be read as using the term 'support' in a realistic manner; the term should not be read so narrowly as to exclude everything bearing on the welfare of the child but the bare paying of bills on the child's behalf. . . . determination of child custody is essential to the child's proper 'support'. . . ." *Miller*, 55 F.3d at 1490, quoting *Jones* 9 F.3d at 881.