UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

PAUL JOHNSON DURKIN,                                                       Case No. 23-10665-t7

       Debtor.

CHRISTEN HAGEMANN,

       Plaintiff,

v.                                                                                    Adv. No. 23-1046-t

PAUL JOHNSON DURKIN,

       Defendant.

## **OPINION**

Plaintiff Christen Hagemann brought this adversary proceeding for a declaration that a prepetition obligation owed to her by Defendant Paul Durkin was a nondischargeable domestic support obligation ("DSO"). The Court earlier granted Hagemann's motion for a summary declaratory judgment to that effect. Now Hagemann asks the Court to award her the attorney fees she incurred in the proceeding and declare the fees a DSO. Durkin opposes the requested relief. Being sufficiently advised, the Court finds that no fees can be awarded.

A.     Facts.

        The Court finds: [1, 2]

---

[1] The Court took judicial notice of the docket in this case and the state court divorce case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).
[2] Some of the Court's findings are in the discussion section of the opinion. They are incorporated by this reference.

Durkin married Jessey Cherne-Durkin ("Jessey") in 2015. They have one child, Sophia, who was born in 2018.

Durkin filed for divorce in September 2019.[3] The divorce was contentious, with both parties alleging serious wrongdoing.

In November 2019, the divorce court appointed Hagemann as Sophia's guardian ad litem ("GAL"). The court order appointing Hagemann (the "Stipulated Order") required her to conduct an investigation, interview the parties, and make recommendations to the court about, inter alia, custody and visitation arrangements for Sophia. The Stipulated Order provided in part:

> D. <u>Expiration of appointment</u>. This appointment shall cease on November 30, 2020, or further Order of this Court.
> . . .
> G. <u>GAL fees</u>.
>    i. Each party shall pay one-half (1/2) of the GAL's retainer of $4,000.00 and $275 hourly; (retainer fee paid by parties by November 30, 2019);
>    ii. The GAL shall submit itemized monthly invoices for professional services to the parties;
>    iii. The GAL may recommend reallocation of GAL fees and expenses;
>    iii [sic]. Either party or the GAL may request a hearing on the GAL fees and costs.
>    iv. The GAL shall not begin work until each party's retainer has been received. Should the GAL not receive the retainer by November 22, 2019, the GAL shall notify the Court of such non-compliance.
> H. <u>Hearings</u>. The GAL may request an expedited hearing if there is non-compliance with any portion of this order or for any other reason deemed necessary by the GAL.
> …

Hagemann did the work she was appointed to do. She issued thoughtful, measured interim and final reports. She billed her time equally to Jessey and Durkin.

Jessey and Durkin signed a marriage settlement agreement and custody agreement on August 13, 2021. Disputes continued, however, about Sophia. The divorce court held an

---

[3] *Paul Cherne-Durkin v. Jessey Cherne-Durkin*, No. D-202-DM-201902970, filed in the Second Judicial District Court, State of New Mexico.

evidentiary hearing on custody, visitation, and related issues on June 13, 2022, and January 9, 2023. On June 14, 2023, the divorce court entered an 11-page order outlining the parties' respective rights and duties concerning Sophia's custody, daycare, schooling, and related matters. The order also terminated Hagemann's duties as Sophia's GAL.

Durkin, proceeding pro se, filed this chapter 7 bankruptcy case on August 11, 2023. It is a no-asset case. No bar date was set for filing proofs of claim and there will be no distribution to unsecured creditors.

On September 5, 2023, Durkin filed a motion in his case to "discharge GAL fees." In the motion, Durkin argued that Hagemann's fees were incurred as a result of Jessey's unreasonable conduct and were not necessary to protect Sophia's interests. Durkin also argued that he is unable to pay the fees, so the payment responsibility should be reallocated to Jessey.

Hagemann retained counsel and filed a response to the motion on October 4, 2023. In the response, Hagemann asserted that the motion was procedurally defective, and also that the Court could not reallocate responsibility for payment of Hagemann's fees without violating the *Rooker-Feldman* doctrine.[4]

At the same time Hagemann responded to the motion, she filed this adversary proceeding, seeking a declaratory judgment that her fees were a DSO and nondischargeable under § 523(a)(5).[5]

The Court denied Durkin's motion in his bankruptcy case on November 8, 2023, ruling that the relief requested could only be obtained by adversary proceeding.

---

[4] The doctrine that only the United States Supreme Court may hear an appeal of a state court final judgment or order. *See generally Grasff v. Aberdeen Enterprises, II, Inc.* 65 F.4th 500, 514 (10th Cir. 2023) (discussing the doctrine).

[5] Unless otherwise noted, all statutory references are to Title 11 of the United States Code.

Hagemann moved for summary judgment in the adversary proceeding on November 15, 2023. The summary judgment motion was fully briefed. On December 20, 2023, the Court granted the motion. Because of, inter alia, the *Rooker-Feldman* doctrine, the Court denied Durkin's request to reallocate responsibility for paying Hagemann's GAL fees.

Hagemann filed the subject motion for attorney's fees on December 22, 2023. The fees at issue are modest—$2,368 (the "Attorney Fees"). The Court held a status conference on the Attorney Fees issue on January 10, 2024. At the conference, Durkin objected to Hagemann's request to shift the fees to him and declare them nondischargeable. The Court took issue under advisement.

B.  Hagemann's Argument No. 1: The Court Should Let the Divorce Court Decide Whether to Award the Attorney Fees to Hagemann.

At the status conference, Hagemann argued that the Court should allow the divorce court to decide whether the Attorney Fees should be included in the nondischargeable debt Durkin owes her. Durkin objected, asserting that this Court was the proper court to rule on the issue. For several reasons, the Court holds that it, rather than the divorce court, should decide the matter. First, the litigation was in the bankruptcy court, so it is the appropriate court to deal with post-judgment matters. Second, Hagemann's motion for attorney fees and costs appears to be a standard Fed. R. Bankr. P. ("Bankruptcy Rule") 7054 motion. The divorce court lacks jurisdiction to rule on the motion. Third, the amount at stake is small. Litigating the Attorney Fee issue in another court could add substantially to the expense. It is more efficient to decide the matter now. Fourth, the Stipulated Order is straightforward; this Court has no problem construing it. Finally, Hagemann has asked for a ruling that the Attorney Fees are nondischargeable. This Court is the appropriate forum for granting such relief. *See Grogan v. Garner*, 498 U.S. 279, 284 (1991) (the issue of nondischargeability is a matter of federal law governed by the Bankruptcy Code).

C.   Hagemann's Argument No. 2: Because the Court Ruled that Durkin Must Pay the GAL Fees, He Also Should Pay the Attorney Fees.

Hagemann argues that "Durkin is financially responsible for payment of GAL's fees, including GAL's attorney's fees in having to initially defend and then prosecute the declaratory action against Durkin." Hagemann's conclusion does not necessarily follow from the premise. Hagemann's GAL fees were incurred representing the interests of Sophia in the divorce action. The Court ruled that they are a nondischargeable DSO. Hagemann's costs to collect the debt represented by the GAL fees, however, is a different matter.

The "American Rule" about attorney fees is that when disputants go to court, each party pays her own lawyer.

> "Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 252–253, 130 S. Ct. 2149, 176 L. Ed. 2d 998 (2010) (internal quotation marks omitted). The American Rule has roots in our common law reaching back to at least the 18th century, see *Arcambel v. Wiseman*, 3 Dall. 306, 1 L. Ed. 613 (1796), and "[s]tatutes which invade the common law are to be read with a presumption favoring the retention of long-established and familiar [legal] principles," *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994) (internal quotation marks and ellipsis omitted). We consequently will not deviate from the American Rule "'absent explicit statutory authority.'" *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 602, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001) (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 814, 114 S. Ct. 1960, 128 L. Ed. 2d 797 (1994)).

*Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015); *see also Tyler v. U.S. Dept. of Educ. Rehab. Serv. Admin.*, 904 F.3d 1167, 1193 (10th Cir. 2018) (citing *ASARCO*). There are several "fee-shifting" exceptions to the American Rule. The primary exceptions are if a statute provides for fee-shifting; if a contract between the parties so provides; or if the presiding court orders fee shifting as a sanction for bad faith or contumacious behavior. *See, e.g.,* David Root,

*Attorney Fee-Shifting in America: Comparing, Contrasting, and Combining the "American Rule" and "English Rule*," 15 Ind. Int'l & Comp. L. Rev. 583 (2005).

1. <u>Fee-Shifting Statutes</u>. A number of federal statutes allow or require fee-shifting. *See, e.g.*, 28 U.S.C. § 1927 (unreasonable and vexatious litigation in "any court of the United States");[6] 29 U.S.C. § 1132(g)(1) (ERISA fee-shifting provision); 15 U.S.C. §1681*o*(a)(2) (Fair Credit Reporting Act); and 15 U.S.C. § 1692k(a)(3) (Fair Debt Collection Practices Act). Indeed, the Bankruptcy Code has several. *See* § 303(i)(1)(B) (dismissal of an involuntary petition); § 362(k)(1) (individual injured by willful stay violation); and § 707(b)(5)(A) (motion to dismiss a consumer bankruptcy case for abuse).

> Federal fee shifting statutes are
>
> not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client. Instead, the aim of such statutes was to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws.

*U.S. ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc.*, 834 F.2d 1533, 1548 (10th Cir. 1987) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *see also Hatronic Int'l, Inc. v. Rempe*, 697 Fed. App'x 589, 590 (10th Cir. 2017) (unpublished) (citing *Pennsylvania*); *In re Pilgrim's Pride Corp.*, 690 F.3d 650, 661 n.11 (5th Cir. 2012) (same).

The only statute Hagemann cites in support of her fee-shifting argument is § 105. That section of the Bankruptcy Code is not a fee-shifting statute per se, but it does enable the Court to

---

[6] The Tenth Circuit has ruled that bankruptcy courts are not courts of the United States and thus lack jurisdiction to sanction a party under 28 U.S.C. § 1927. *See In re Courtesy Inns, Ltd., Inc.*, 40 F.3d 1084, 1086 (10th Cir. 1994).

-6-
Case 23-01046-t   Doc 28   Filed 01/26/24   Entered 01/26/24 14:10:28 Page 6 of 12

award attorney fees as part of a monetary sanction. Because fee shifting under § 105(a) is limited to sanctions, however, it will be discussed below.

2. Contract. There is no contract between Hagemann and Durkin. There is, however, the Stipulated Order, signed by counsel for Jessey and Durkin. A stipulated order is like a contract in many respects. *See, e.g., In re Hart Oil & Gas*, 2016 WL 7377049, at *3 (Bankr. D.N.M.) ("stipulated orders should be construed under applicable rules of contract interpretation"); *In re Hassen Real Estate Partnership*, 4 Fed. Appx. 537 (9th Cir. 2001) (a stipulated order "functions as a contract; as such, its terms must be analyzed using rules of contract interpretation). Furthermore, although Hagemann did not sign the Stipulated Order, she is a third-party beneficiary of it. *See, e.g., Fleet Mortg. Corp. v. Schuster,* 112 N.M. 48, 50 (S. Ct. 1991) (one is a third-party beneficiary of a contract if the contracting parties intended some of the contract terms to benefit that person).

Unfortunately for Hagemann, the Stipulated Order does not contain a fee-shifting provision. Paragraph G(iii) of the order says that "[t]he GAL may recommend reallocation of GAL fees and expenses." Similarly, the second paragraph G(iii) [sic] says that "[e]ither party or the GAL may request a hearing on the GAL fees and costs." Could attorney fees incurred collecting the GAL debt be considered an "expense" or a "cost"? The Court thinks not. The Court finds that the parties meant something more limited by costs and expenses, namely, regular, out-of-pocket costs like postage, copy charges, filing fees, courier charges, and travel expenses, and the like.[7] Collection costs generally are not lumped in with such everyday expenses. Fee-shifting is a

---

[7] Although Hagemann would likely be entitled to court costs under Bankruptcy Rule 7054 and LBR 7054-1, it does not appear that Hagemann incurred any such costs in this litigation.

significant contract term. To achieve a "meeting of the minds" about fee-shifting in a contract, something more is needed than a reference to "expenses" or "costs."[8]

Furthermore, the only explicit reference to Durkin's obligation to pay Hagemann anything at all is in paragraph G(i), which provides that "[e]ach party shall pay one-half (1/2) of the GAL's retainer of $4,000 and $275.00 hourly; (retainer fee paid by parties by November 30, 2019)." The paragraph does not refer to any expenses or costs, let alone to costs of collecting a GAL debt.

In addition, when Hagemann incurred the Attorney Fees, she was no longer Sophia's GAL. When Durkin filed this case and sought to discharge the GAL fees, Hagemann acted to protect her financial interests, not Sophia. The resulting lawyer expense cannot be considered a cost or expense under the Stipulated Order.[9]

Finally, the Stipulated Order was entered pursuant to New Mexico Rules Annot. ("NMRA") 1-053.3, titled Guardians *Ad Litem*, Domestic Relations Appointments. The rule provides in part:

> K. Fees and costs. The order shall state the guardian *ad litem*'s authorized retainer and hourly rate, provide for itemized monthly statements to the parties, and designate the manner in which the parties bear the cees and costs. Either party or the guardian *ad litem* may request a hearing on the guardian *ad litem* fees and costs.

The rule does not mention collection costs or attorney fee-shifting. However, the rule does refer to NMRA, Form 4-402, Order Appointing Guardian *Ad Litem*. The Stipulated Order follows the form order fairly closely. The form order does not contain a fee-shifting provision.

---

[8] The Court noticed in Hagemann's fee bills that she is charging Durkin interest on "overdue balances." It is not clear Hagemann has a right to charge interest. Interest is not mentioned in the Stipulated Order; there is no fee agreement allowing Hagemann to charge interest; and Hagemann does not have a final judgment that would allow statutory interest to accrue.

[9] Moreover, if the Attorney Fees were a "cost" under the Stipulated Order, Jessey would be liable for half the fees!

The Court finds and concludes that the Stipulated Order does not include a fee-shifting provision. It did not alter the American Rule.

3. <u>Sanctions</u>. As noted above, attorney fees may also be awarded as a sanction. *See, e.g.*, Bankruptcy Rule 9011(c) (sanctions can be imposed for filing a paper for an improper purpose, making a legal contention that is not warranted by existing law, or alleging facts for which there is no evidentiary support) and *In re Vascular Access Centers, L.P.*, 646 B.R. 735, 758 (Bankr. E.D. Pa. 2022) (rule 9011 permits courts to award attorney fees as a sanction).

Hagemann has not asserted that Durkin violated Bankruptcy Rule 9011. However, she argues that § 105(a) gives the Court authority to shift the Attorney Fees to Durkin. Section 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Section 105(a) does not give the Court the unfettered right to award attorney fees. "Section 105(a) standing alone does not give a bankruptcy court the authority to award attorney's fees." *In re Coffey*, 647 B.R. 365, 411 (Bankr. E.D. Ark. 2022) (quoting *In re Gjestvang*, 405 B.R. 316, 322 (Bankr. E.D. Ark. 2009)); *see also In re Schwartz-Tallard*, 473 B.R. 340, 351 (9th Cir. BAP 2012) (bankruptcy court could not award attorney fees under § 105(a) without a finding of sanctionable conduct); *In re John Richard Homes Building Co., LLC*, 523 B.R. 83, 87 (Bankr. E.D. Mich. 2014) ("Section 105(a) does not authorize an award of attorney fees in the absence of an underlying sanctionable conduct."); and *In re Saldana*, 531 B.R. 141, 167 (Bankr. N.D. Tex. 2015) (bankruptcy court must make a specific finding of bad faith to award attorney fees as a sanction). Rather, § 105(a) only allows the Court to award fees as part of a sanction for bad faith conduct or

-9-
Case 23-01046-t    Doc 28    Filed 01/26/24    Entered 01/26/24 14:10:28 Page 9 of 12

contumacious behavior, such as a willful violation of the automatic stay. *See, e.g.*, *In re Courtesy Inns*, 40 F.3d 1084, 1089 (10th Cir. 1994) (§ 105(a) gives bankruptcy courts civil contempt power); *In re Scrivner*, 535 F.3d 1258, 1263 (10th Cir. 2008) (§ 105(a) grants bankruptcy courts the power to sanction conduct abusive of the judicial process). In such cases, the sanction may include attorney fees. *See, e.g., In re Arcapita Bank B.S.C.*, 648 B.R. 489, 503 (Bankr. S.D.N.Y. 2023) (bankruptcy courts may award attorney fees as a sanction for violation of the automatic stay); *In re Jackson*, 2023 WL 2202738, at *3 (Bankr. D. Conn.) (same); *In re Trevino*, 648 B.R. 847, 905 (Bankr. S.D. Tex. 2023) (attorney fees can be awarded as part of a sanction for bad faith conduct, citing *In re Carroll*, 850 F.3d 811, 816 (5th Cir. 2017)); *In re Semco Mfg. Co., Inc.*, 649 B.R. 155, 171-72 (Bankr. S.D. Tex. 2023) (same); *In re Anloc, LLC*, 2021 WL 5441076, at *2 (Bankr. S.D. Tex. 2021) (same); and *In re Rodriguez*, 517 B.R. 724, 736 (Bankr. S.D. Tex. 2014) (same).

Here, Hagemann has not alleged that Durkin's conduct in this dispute was in bad faith, contumacious, or otherwise sanctionable. She asserts or implies that his position was weak. That is true. On the other hand, Durkin is pro se, his position was colorable, and he did not make the dispute time-consuming or expensive. The Court finds that Durkin proceeded in good faith. Durkin was invariably polite and reasonable. There are no grounds to sanction Durkin under § 105(a), so it cannot be the basis for making Durkin pay the Attorney Fees.

D. <u>Hagemann's Argument No. 3: It is Logical That the Party Responsible for Forcing Hagemann to Defend her Claim Should Pay Her Attorney Fees in Doing So</u>.

The Court agrees with Hagemann that because Durkin forced her to hire a lawyer and obtain a determination that the GAL fees were nondischargeable, it would be "logical" to order Durkin to pay the Attorney Fees. By the same token, if Durkin had retained counsel to litigate the issue and had prevailed, it would have been logical to order Hagemann to pay Durkin's attorney fees. What Hagemann advocates is application of the "English Rule," under which, in general

terms, the loser pays the winner's attorney fees. *See generally* David Root, *Attorney Fee-Shifting in America: Comparing, contrasting, and combining the "American Rule" and "English Rule,"* 15 Ind. Int'l & Comp. L. Rev. 583 (2005). The English Rule, however, whatever its virtues, does not apply here. Rather, the American Rule applies. Hagemann's argument must therefore be overruled.

E. <u>Hagemann's Argument No. 4: The Fees Should be Characterized as a Domestic Support Obligation</u>.

In addition to ordering Durkin to pay Hagemann's attorney fees, Hagemann asks the Court to declare the fees nondischargeable under § 523(a)(5). If Hagemann were entitled to an award of fees, it would be an interesting question whether the fees could accurately be characterized as a DSO.[10] *See, e.g., In re Cyr*, 2020 WL 3119068 (Bankr. W.D. Tex.) (discussing nondischargeability of attorney fees incurred in litigating nondischargeability of underlying debt) and *In re Harber*, 2015 WL 3465742, at *8 (Bankr. N.D. Miss.) (same). However, since the Court rules that no fee award can be made, the point is moot.

## Conclusion

This Court is the proper tribunal to decide whether Durkin must pay the Attorney Fees and, if so, whether the Attorney Fees are dischargeable. The Court concludes that the "American Rule" governs in this case and that no exceptions to the rule apply. In particular, neither the Stipulated Order nor § 105(a) requires Durkin to pay the Attorney Fees. There is therefore no basis for shifting the Attorney Fee burden from Hagemann to Durkin. Finally, the Court concludes that it need not

---

[10] Interesting, perhaps, but probably not of great moment. The Attorney Fees were incurred postpetition, so they will not be subject to discharge in chapter 7 for nearly eight years. *See* § 727(a)(8).

address whether the fees, had they been shifted, would be a nondischargeable DSO. A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: January 26, 2024

Copies to:

Counsel of Record

Paul Durkin
316 Pequin Tr. Southeast
Albuquerque, NM 87123